## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **EARL JOSEPH GUIDRY, JR.** | **CIVIL ACTION NO. 06-0274** |
| **VS.** | **SECTION P** |
| **GARY COPES, ET AL.** | **JUDGE DOHERTY** |
| | **MAGISTRATE JUDGE METHVIN** |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on February 13, 2006 by *pro se* plaintiff Earl Joseph Guidry, Jr. Guidry is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Caldwell Correctional Center, Grayson, Louisiana, however, he complains of an incident that occurred in October 2005 when he was incarcerated at the Pine Prairie Corrections Center (PPCC), Pine Prairie, Louisiana. He asks for compensatory and punitive damages and names only PPCC Warden Gary Copes and Captain Victoria as his defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted as provided by 28 U.S.C. §1915.

## *Background*

In his original complaint Guidry alleged the following.

On October 1, 2005 he was an inmate at the PPCC. On that date he was brutally attacked in his sleep by three unknown inmates. Guidry claims that he was struck in the head and face and stabbed in the arm. He was sent to the University Medical Center (UMC) in Lafayette where he received stitches for an injury to his lip. He claims that the attack left him with chipped and loosened teeth and a loud ringing sensation and loss of hearing in his right ear.

He claims that his assailants were convicted of a disciplinary rules violation and placed in lock-down for 90 days. He claims that although the inmates were charged with striking him with their fists, in fact they were armed with home-made weapons. He complains that the PPCC conducted no "shake-down" search of the facility following the assault. He seeks compensation for pain, suffering, and anxiety and punitive damages for the gross negligence and deliberate indifference of the defendants.

Because his complaint was deficient, Guidry was given an opportunity to amend in order to state a claim. Guidry was specifically instructed to provide detailed information and to state facts sufficient to state a claim for relief against the defendants. More specifically, Guidry was instructed to provide sufficient facts to establish that the defendants were guilty of deliberate indifference. [doc. 9]

On July 14, 2006 Guidry amended his complaint. In the amended complaint Guidry claimed that "...the act of deliberate indifference was performed by the staff on duty ... on the date of 9-30-05 a.m. — 10-1-05 a.m. in Bayou B dorm..." According to Guidry, 25 or more inmate-evacuees had been placed in that dorm because of Hurricane Katrina. Guidry faults the

defendants for not providing "... 24-hour surveillance by the staff on duty by having an officer on standby in the dorm for reasons of riot or unruly behavior ..." [doc. 10-1, p. 1]

He explained that on the evening in question, "a gang of inmates ... were gambling dice and rough housing in the rear dorm." Guidry claims that the noise awakened him from his sleep. He asked his "bunkee" to ask the other inmates to "show come consideration" and not "rough house" around his bunk. However, these inmates ignored Guidry's request. [doc. 10-1, p. 1]

Guidry then went to the sally-port[1] to request assistance from a guard. He opened the observation room door and noticed that the guards on duty were sitting around talking and not observing the cell either through the window or closed-circuit television cameras. They did not respond to Guidry's call. However, shortly thereafter, the officers conducted a "head count" in the cell. Guidry went to sleep "... unaware of the schemes the 3 inmates who attack [him] plotted against [him] in order to avenge themselves of [his] effort for peace..." Guidry wore ear plugs to reduce the noise in the dormitory and therefore did not hear his assailants approach him. [*id.*, p. 2]

Following the attack, Guidry was escorted to a "holding tank" where he waited for 4 ½ hours before he was transferred to the University Medical Center (UMC) in Lafayette for treatment. [*id.*] Upon his return to prison, Guidry was placed in lock-down for a period of five days and then returned to the dormitory. On some unspecified date following his return to the dormitory, Guidry filled out a medical request form complaining of headaches. [*id.*, p. 3]

---

[1] A "sally port" is "a large gate or passage in a fortified place." *Webster's Third New Int'l Dictionary* 2004 (unabridged ed.1986).

On some unspecified date thereafter he complained of ringing in his right ear. Guidry was advised by the nurse that the sensation would go away upon healing. [*id*]

Thereafter, on some unspecified date Guidry met with Major Riley and requested the identities of the three assailants. Riley refused Guidry's request and, on the following day, October 18, 2006, he was transferred to the J.B. Evans Correctional Center (JBECC). While at JBECC Guidry filed a "grievance" to PPCC by mail. Guidry did not know the name of the PPCC Warden or Assistant Warden. Guidry made a hand-written duplicate of his grievance and requested Lt. Bouselor at JBECC to make a copy of the grievance for him. However, Guidry claims that no copy was made and his hand-written copy was not returned to him. Guidry claims that he made a second hand-written duplicate of his grievance and mailed it to a family member. He also claims that he instructed that family member to mail the document to this court. [*id*., p. 4]

Guidry claims that the failure of the PPCC authorities to discipline his assailants encourages them to "continue in such behavior." [*id*.]

### *Law and Analysis*

#### *1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Guidry was given the opportunity to amend; he was specifically directed to comply with the provisions of Rule 8 of the Federal Rules of Civil Procedure and to allege specific facts in

support of his conclusion that his constitutional rights were violated by each defendant. Guidry was directed to provide:

> (1)  the name of each person who allegedly violated his constitutional rights;
> (2)  a description of what actually occurred or what each defendant did to violate his rights;
> (3)  the place and date that each event occurred; and
> (4)  a description of the alleged injury sustained as a result of the alleged violation. [see doc. 9]

Further, he was instructed to plead more than just conclusory allegations to establish the "deliberate indifference" of the defendants. [*id*.]

Guidry's amended complaint provided little in the way of clarification. Nevertheless, it appears that Guidry has pleaded his best case and therefore further amendment would serve no useful purpose.

## *2. Supervisory Defendants*

Guidry named only two defendants: Warden Gary Copes and Captain Victoria. These two defendants appear to have been named in their supervisory capacities. Guidry was previously advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div*., 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct.

248, 78 L.Ed.2d 236 (1983). Guidry was advised to allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by the defendants. He failed to do so and this failure is fatal to his claim.

*3. Failure to Protect*

Guidry alleges that the defendants failed to protect him from his fellow inmates. The Eighth Amendment's "cruel and unusual punishment clause" protects the rights of convicted prisoners; the rights of pre-trial detainees are protected by the "due process clause" of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Allegations of "failure to protect" are evaluated under the "deliberate indifference" standard, whether alleged under the Fourteenth Amendment by pre-trial detainees, or under the Eighth Amendment by convicted prisoners. *Hare*, 74 F.3d at 640-43. The undersigned assumes that Guidry was a convicted prisoner at the time of the events complained of.

Guidry's right to be protected from violence is measured by the standard of "subjective deliberate indifference" as enunciated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *Hare*, 74 F.3d at 643. Under *Farmer's* "subjective deliberate indifference" standard, a prison official cannot liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." Thus, in order to prevail on such a claim, a civil rights plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and (2) that they actually drew the inference. *Farmer*, 511

U.S. at 837. Negligent inaction can never support a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642.

Guidry has not alleged <u>any</u> facts to support his claim that either of these two defendants were deliberately indifferent to his health or safety. He offers no reason to believe that these defendants were objectively aware of any risk of harm to the plaintiff. Guidry himself did not have an objective fear of harm from the assailants. Since Guidry has not established that either defendant was deliberately indifferent to his safety from attack by fellow inmates, his claim must be dismissed as frivolous.

Accordingly,

**IT IS RECOMMENDED** that Guidry's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

**conclusions accepted by the District Court, except upon grounds of plain error. See**

*Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on October 18, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)